For the attorneys who are going to make a presentation, please approach the podium and identify yourselves and the party you represent. Good morning, Your Honors. David Siegel, SIGALD, on behalf of the appellant, David Kelly. Good morning, Your Honors. I'm Veronica Calderon, Assistant State's Attorney, representing the people of the State of Illinois. Okay, good morning. We have reserved 30 minutes' time to hear this case. We can be a little flexible because there's no other case up today. The appellant can reserve five minutes for rebuttal, if they'd like. And with that, you can proceed when you're ready. Okay. Well, good morning, Your Honors, and may it please the Court. The issue in this case is very narrow. Can the State criminalize the possession of a firearm if the bearer also possesses a misdemeanor or civil violation amount of cannabis? In Moore v. Madigan in the Federal Seventh Circuit and People v. Aguilar in our Illinois Supreme Court, the courts both ruled that a ban on a possession of a firearm outside of the home should be struck down as an unconstitutional violation of the bearer's Second Amendment rights. Those were complete ban cases, were they not, Counsel? They were complete ban cases. Is that the same case that we have here? I cite them only to stress the fundamental nature of the right of possession of a firearm. It also bears into this case because Mr. Kelly was charged with six counts of possession of a firearm, three just for straight out possession, the type of Aguilar, and three that involved the possession of a firearm like Aguilar with the added element of possession of a firearm. misdemeanor amount of cannabis. Now, in the trial court, the three non-cannabis-related offenses, the one that were pretty much exactly like Aguilar, were dismissed. So after, actually after a plea, a plea was vacated, and then pursuant to Aguilar, three of the counts were dismissed, which left the three counts for, which left the three counts involving the misdemeanor amount of cannabis. Well, the Aguilar and Burns cases basically declared unconstitutional particular provisions which made the outright ban, which constituted an outright right ban. Those courts have held that states have a right to impose reasonable restrictions. I'm sorry, I didn't mean to interrupt you. And the state claims this is a reasonable restriction to prevent people who are armed from having their possession of marijuana. Well, not just that, but also at the time, breaking marijuana laws. Well, but even at the time, it was, according to the state, it was only a class B misdemeanor amount of cannabis. So whether, it's an amount that after SB 2228. Well, can't the state say, well, this is reasonable for us to say that it's dangerous for someone with a weapon to simultaneously have marijuana, particularly at a time when, in order to get the marijuana, it's not legal, you have to go to an illegal source, so we have what by definition a lawbreaker who's armed. The state can say that, but it is not reasonable. Because a Second Amendment right is affected in this case, the right to bear arms outside the home, that is what Moore v. Madigan and People v. Aguilar held. Even Heller would restrict the right to bear arms, is that correct? That they provide us a non-exhaustive list of reasonably legal things that an individual can be engaged in, and nonetheless, find them to be appropriate restrictions. Well, Heller unfortunately left a number of open questions. And one of what was written in Heller was that certain restrictions are presumptively lawful, such as restrictions on felons in possession. And what has happened in the ten years since then is that a number of individual cases involving felon in possession statutes have been struck down as applied to individuals, and those people's Second Amendment rights have been restored. Is this an as-applied case? It's both. I think that the taking a civil amount, a civil violation amount of cannabis and saying, well, you can't do this, you can't do that. And saying that's enough to label you a felon for the rest of your life for what otherwise would be exercising a constitutional right, that that is an unconstitutional result. But we're not saying that you can never get a gun license. That's not what this law says. It just says if you have marijuana at the time you're found with a possession of a gun, right? It's not a ban for life. It's not a ban of any kind. Well, that's the effect, because if a person is found guilty of that, they become a felon. So you take an act that is constitutionally protected, you add it with something that is a civil violation, and that becomes a lifetime felony ban. You mean because you're convicted of a felony there, you can't get a gun next time? Ever. But that's not what you're suing over here. You don't have standing to raise that, do you? Well, I would, because Mr. Kelly is affected by that, however. I am not. Mr. Kelly is not raising that. Mr. Kelly's firearm rights were affected by other things that went on in the case. And so we are not asking this court to restore any firearm rights. What we are asking this court to do is to overturn the felony conviction. That this act of something that was constitutionally protected, just because it's combined with something that is a civil violation or even a very low-level misdemeanor, should not combine to turn into a permanent felony. Your Honor asked whether or not can the state do reasonable. The state can do what's constitutional. And since we know that the Second Amendment is affected in this case, in fact, the state concedes that, what we're dealing with then is what Ezel would describe as means-end scrutiny. Now, Heller seemed to say means-end scrutiny isn't even appropriate, but the Seventh Circuit applied it in Ezel. And if the court is inclined to go down that road, Heller would just say was a non-violent misdemeanor offense, enough to label someone as a lifetime, to make someone stripped of their right to have firearms such that they should be labeled a felon for doing so. Is your argument that not that the state can't prohibit possession of a weapon and marijuana at the same time in violation of the Marijuana Act? Is that the price for that felony is too high? Is that what your argument is? I suppose that's a portion of what I'm arguing, but no, I'm arguing that in this very narrow circumstance, that that law that says that something that would be the right exercise of a constitutional right, just by adding this low-level amount of cannabis, should not be a criminal offense. But the state often will pass laws that will restrict the use of firearms in certain situations where the state can't prohibit the use of firearms. The state would at least argue that there's some level of concern for safety. For example, I think we have a law that says if you have a restraining order against you, an order of protection against you, you can't have a gun. You haven't violated any criminal law, you just have a civil restraining order against you. But you still can't have a gun because we think that there might be some reason to fear what you would do with that gun. And I suppose we talk about the mentally ill sometimes being restricted from having guns. And again, they haven't committed a crime, but we think they might not be safe people to have guns. Couldn't the legislature here, whether it's a misdemeanor or a felony, couldn't the legislature here have said, if you're on drugs or if you're taking drugs, at least if you have drugs in your possession such that it's reasonable to think you're abusing them, that you probably shouldn't be doing those things while you have a gun. Is that so unreasonable? It's unreasonable as applied in the narrow facts of this case. Because, and certainly I'm not here arguing about anything about restraining orders or mental illness or anything like that. But I don't think that they're comparable to the narrow set of circumstances that we have in this case. This case is not about drug use. It's not about drug trafficking. It's not about possession with intent to sell. There was no evidence, there wasn't even evidence in the case that Mr. Kelly was under the influence of cannabis at the time that this happened. He was convicted of a DUI, is that correct? And can we not draw an inference based on some of the circumstantial evidence that was in the record? Well, now unfortunately, Your Honor, I go a tiny bit outside the record. I was Mr. Kelly's third counsel. When I came into the case, I said, I'm looking through, I said, what about this DUI? He said, what are you talking about? I suspect that at the time the first plea was entered for the first AUUW charge, before the motion to vacate the plea, that it got wrapped up in it. And said, okay, we'll give you X amount of months probation for that. We'll give you X amount of months probation for the firearm. Let's go home. And then no further thought was given to that when the plea was vacated and all of a sudden everything winds up, all the firearm charges wind up back on the table. But that's, again, I apologize because that's a little bit kind of outside the record here. But the fact is, is that when I came into the case a couple years after that had happened, Mr. Kelly didn't know what I was talking about with regard to that. And so that was a challenge to the DUI conviction. And so the DUI conviction stands and there's not been any challenge to it at all. And so on this record, we must conclude, mustn't we, that there was a DUI conviction? I think the court can consider it, of course. But I think that the court should consider more the fact that there was an actual trial with four police officers and Mr. Kelly. And that by the end of it, even the trial judge had no clue whether or not Mr. Kelly had used cannabis at the time or was under the influence because he said there was no evidence to that at all. And, in fact, that DUI didn't, to my recollection, did not come up during the trial as any kind of conclusive evidence one way or the other. But there had already been a conviction on it, so why would it have come up? I mean, in what posture could it have been raised? There had already been a conviction on it and a sentencing order entered by the time of the bench trial on the unlawful weapons charge. Notwithstanding that conviction, all I can say is that at the end, even the trial judge said he did not know if Mr. Kelly had used cannabis or if Mr. Kelly had been under the influence of cannabis at the time of the offense. What was also in evidence was that Mr. Kelly had a medical condition that caused severe headaches and nausea. They vomited at the scene and was taken to the hospital for that medical condition. And there's no evidence of any other influence that would have caused that. And so I certainly, certainly that conviction for DUI can be considered by the court. But I would posture that it's outweighed by all the facts that were, or non-facts, as it were, that were adduced at the trial. The court should, in considering whether or not something is reasonable, should look at the appropriate level of scrutiny. If the court is not going to follow the Heller approach and say, was this banned or not, and low-level misdemeanor offenses at the time of Heller were not. But if the court is going to apply, say, an Ezell approach, because we know the first step, we know that the Second Amendment is affected in this case. The state claimed that, and this goes to your point, Judge Ellis, this is that the state claimed to prevent accidental, reckless, or irresponsible firearm discharge. There's no evidence that any of that happened. And again, there's no evidence that there was any cannabis use. Do we have to wait until that actually happens before the state can actually impose such a restriction? That's like until there's a dead body, we can't say anything about murder. No, the state, but in your analogy, Your Honor, the state can certainly say you're not allowed to kill someone, and there's a clear public, well, except, say, in self-defense, for example, reasonable self-defense, and of course there's clear justifications for making that rule. In this case, there are plenty of rules regarding the unlawful use of a firearm that involve actually using a firearm, as well as the unlawful use or other activities involving cannabis. The state claims that it would be fine if he had a cannabis and a firearm in his home. There's nothing stopping someone, except the law, from someone getting high in their home and then taking the firearm out, and that doesn't even invoke this statute. So we have to look whether or not the means and the ends actually serve each other. Well, it may not be a perfect fit. I mean, you may have some people who are caught with marijuana who aren't high at that moment, maybe even some with marijuana in their pocket who are not planning on using it themselves, and you may have people who are completely high but use it at home, and as you said, now they're driving around. And yeah, the law may not be able to catch all those things, but if the law does its best to try to hit the, you know, we don't usually require that level of pinpoint precision in laws, do we? I mean, if they pass a law saying you can't be caught with marijuana while in possession of a gun because we don't want people using drugs while armed, even if that's not going to cover every situation perfectly, isn't that still a reasonable restriction? Your Honor, on the narrow facts of this case, I don't believe it does. I believe that virtually every other specific aspect where harm might actually ensue is already criminalized. So really what this becomes a question of, are you not allowed to transport them in the same vehicle? I mean, that's all Mr. Kelly was doing at the time. And what we have now, you know, is a situation where, I mean, in many, many states, and practically in this one, it's something, cannabis is something that is barely even illegal. Now, I don't mean to, you know, I don't mean to say that at the time it wasn't. It was to a low misdemeanor level, and now to a civil violation ticketable level, which is only at best, I suppose, quasi-criminal. And a year from now, I mean, it might not be criminal at all, and in other places it's not criminal at all either. I mention this because, not to try and split hairs, but because to really stress the narrow aspect of this case. What this really is about is that he had a misdemeanor, Mr. Kelly, had a misdemeanor slash civil violation amount in a vehicle and was transporting it along with a firearm, which the Illinois Supreme Court and the Seventh Circuit Court of Appeals said he had the right to do. But because of that, because those two circumstances came together, now he's a lifetime felon. No, that's Heller. I mean, Heller says Second Amendment right combined with something else might be okay, because no Second Amendment right gives anyone the right to carry a weapon anytime, anywhere, or I don't know what they say, for any reason, but there are parameters. Sure, but the Seventh Circuit said that prohibiting someone from carrying outside the home is not one of those parameters. Heller said that possession by felons or the mentally ill are presumptively lawful restrictions. But in the ten years since, plenty of courts, such as Binderup and Suarez in, I believe, the Third Circuit, the Hatfield case in the Southern District of Illinois, the Gowder case, Barton in what I also believe is the Third Circuit. But if we go back, those cases where people were carrying weapons outside the home, but did not, that they were charged, did not fail to possess a firearmer's identification card, that part of the statute was held up, am I correct? Those convictions under that part of the statute were valid. Well, actually, in virtually all the cases that I'm talking about, they involve firearms licensing, where someone had a felony conviction and they went to court because they were denied their Second Amendment right, or allegedly. And they said that this felon in possession statute, 922G1, that forever prohibits me from having a firearm, is unconstitutional as because the offense that happened so long ago, it was nonviolent, I'm not a danger to anyone, and the courts agreed with that and said that the Heller presumptively lawful portion of Justice Scalia's opinion does not extend to those type of cases. So the key word, I think, in what Your Honor was citing is so it's, as time has gone by, those presumptions have been overcome. What I'm asking of the court, what I'm arguing to the court this morning, is that the presumption of reasonableness that the court might apply to what the state wants to do is overcome in the narrow set of circumstances that exists here. If this was a case of Mr. Kelly had a large amount of cannabis and was charged with possession intent to sell, I'd say well then, you know, probably get over it and move on with the rest of your life. If this was a case of Mr. Kelly pointed a firearm at the officer or shot it in the air because the bulls won or lost, then say, you know what, don't do that again and move on with the rest of your life. But here in this case, the circumstances that have come together where you have a constitutional right plus a very minor misdemeanor at best, now have labeled him permanently a felon. And it's that that I'm asking the court to overturn in this particular case. Whether or not the court finds that in all circumstances the possession of a firearm plus a very small amount of cannabis is an unconstitutional charge to anybody that does it, or whether or not the court wants to limit the case to Mr. Kelly, Mr. Kelly will be happy either way. Maybe the next person wouldn't be, but I don't represent that person today. We're the only ones that can help you with time. We're good. I just, because it sounds to me like you're arguing for an outcome determination with respect to constitutionality, and I've not seen that. It's either the level of scrutiny and then the state's or the government's justification for the infringement. But I've never seen it, I've never seen the test, the outcome of the infringement as being the determining factor with respect to constitutionality. So you keep saying, well, this ends up being a felon, this ends up being a felon, and therefore it should be held unconstitutional. That to me is kind of like adding outcome as the test of constitutionality. And I've never seen that, but if there's a case that addresses it in that way. I believe the reason that I'm phrasing it as such is that if, say Mr. Kelly was charged with the unlawful use of a weapon statute, but the trial court had said, but given Aquilar, and given the fact that the amount of cannabis was only by itself a B misdemeanor, or if it happened a couple years later, you get a ticket for it, so we're going to charge Mr. Kelly as such, that it's going to be a ticketable charge, or it's a misdemeanor charge. That doesn't have the, it's not outcome, I'm not arguing outcome, but I am asking the court to take the outcome into effect, into consideration, as to whether or not the means or ends justification is met here. This is in effect trying to kill a fly with a sledgehammer, is what the state has done here. Again, other parts of the If this was about selling marijuana, if this was about, the statute also talks about other controlled substances, or methamphetamines, and if it was about that, we wouldn't be making this argument, but because the law here, the law here takes something that is constitutional, adds it to something that is very, very minor, and then says that it's being charged as a felony, that rises to the level of unconstitutionality. It's a good question, Your Honor, whether or not Mr. Kelly would have, if it was only charged as a misdemeanor, and it didn't affect the rest of his life, whether or not he would say, okay, fine, or the next hypothetical person will, or the person who gets it charged only as a ticket or something, because they have a FOIA card or a CCL, and they're otherwise not breaking the law, and they say, I'm just going to take the ticket, and I'm going to let it go. Whether or not that is even unconstitutional, I suppose, is another court for another day. I agree with Your Honor, though, that you'd be looking only, really, at the nature of the charge. You're criminalizing something that was not, you're criminalizing the exercise of Second Amendment rights that either flat out was not excluded in the time of the framers, as Heller would say, the historical analysis, nor does it meet the means end scrutiny, as the state's stated purpose is, of EZEL, where it's not about reasonableness, it's about near strict scrutiny EZEL, because this is very close to the core right. This is the right to carry outside the home, and Moore v. Madigan was held to be just as important as inside the home. The EZEL court, which involved firing ranges, said that when it's that close to the core of the right, near strict scrutiny applies, and it's not about reasonableness at that point. It's not about the reasonableness of intermediate scrutiny that sometimes gets labeled. It's not about important interests and substantially related. It's about compelling interests, and it's about least restrictive means, and given the narrow facts of this case, as it has been used against Mr. Kelly, the law is unconstitutional. I don't know at this point if I should be just asking to reserve rebuttal, but if the court has any questions. Thank you, Your Honors. Ms. Calderon. In order to accept defendant's argument, one must first believe that a person has a Second Amendment right to protect. Heller and Aguilar expressly recognized that the Second Amendment belongs to responsible, law-abiding citizens. The other problem with defendant's argument is that he assumes he was prevented from exercising his Second Amendment right, and he's wrong. He had a choice. The provisions gave him his choice. He could have left his cannabis at home if he wanted to be armed in public for his protection. And it's right, this is not a flat ban. And that's what makes it different from all the other firearm regulations that have been stricken facially. Heller and McDonald didn't have a choice. The laws there prevented all residents from having ready-to-use firearms at home. Moore, Aguilar, Burns, Mosley didn't have a choice. The cases in Azeal and in Cherise, they were more like flat bans, because they were sweeping in nature, and they impeded the free exercise of the Second Amendment in those cases, of a person's Second Amendment right. But here, defendant had plenty of opportunities to exercise his Second Amendment right. The provisions at issue are extremely limited, so any burden on the Second Amendment, if there is any, is minimal. Contrary to defendant's position, they don't strip a person of his Second Amendment right to possess a firearm in public. They don't actually impact the Second Amendment right to self-defense. They only operate when a person is engaged in a misdemeanor violation of the Cannabis Control Act. Possession of cannabis has nothing to do with self-defense. It doesn't enhance it in any way. But here we're not talking about the mere misdemeanor. Once there was a gun, we're talking about a felony. The legislature, who's in charge of defining offenses, determined that the possession of cannabis, a misdemeanor, was serious enough for it to be a felony. But the legislature talks about it being a misdemeanor offense within the statute, right? The drugs part of it was a misdemeanor. Yes, that was a misdemeanor, which became a felony once there was a gun in public. That's what we're talking about. Right, and it was reasonable to do so, and it was narrow. May I ask you, is the State's Attorney's Office still prosecuting these misdemeanor drug offenses by themselves, if there's no gun? If there's no gun? The State's Attorney's Office, have they changed position at all on prosecuting cannabis cases recently? Are there certain cases they're no longer prosecuting? We always take a look on a case-by-case basis as to drugs, and I'm not aware of any policy either way. Okay. However, also, this case is narrow, but what's narrow is the actual provision at issue. Not only does it apply only when a person's outside violating the Cannabis Control Act, it's also limited in location. It doesn't apply in a land of another, right? It's very terms, it's a narrow regulation in public. And again, the impact to the Second Amendment is minimal, because people are left with a simple and feasible option of leaving their marijuana at home if they want to possess a gun in public for their protection. In light of the limited scope, the legislature's decision to criminalize the simultaneous possession of a firearm and cannabis constituted a close fit to the compelling governmental interest in protecting the public from incidents of violent crime, as well as reckless, accidental and irresponsible discharge of firearms. And the primary goal in enacting these provisions is gun safety in public. Your Honors, as made evident by the laws criminalizing driving, flying, boating under the influence, the legislature is fully aware that the consumption of cannabis can immediately impair motor skills, coordination and reaction time, and it also causes paranoia or anxiety. And these effects increase the possibility that there will be accidental, reckless and irresponsible discharge of guns. And by making it a class 4 felony, the legislature established a strong deterrence. And it was also, contrary to the defendant's position, it was also reasonable for the legislature to prohibit mere use and not just, mere time, it was a misdemeanor. Second, possession heightens the risk that it will be used. Common sense dictates that if one, that one possesses cannabis for two reasons, either to use it or to sell it, and both are dangerous while armed. And the penalties, it's no different than the criminalization of open alcohol while driving. The penalties are stiffer here with regards to this gun offense, and they're stiffer for good reason. While both a car and a gun are both inherently dangerous instrumentalities, the purpose of a gun is to kill and maim. Also, while driving under the influence, it's easier for the public or for the police to detect that someone is impaired while driving, you know, and before there's injury or any damage. That's not true with a gun. One may not know that an impaired person is armed until he takes out the gun and use it, and then it will be too late to prevent injury. So this is not a minor, once you have it together, contemporaneous use of a, contemporaneous possession of a gun and cannabis, it's not minor, it's a major to enact and define it as an offense and given a severe penalty or a stiffer penalty. Q. Counsel, do you agree with your opposing counsel that there was no evidence in the record here of impairment? A. No, I don't. First, the evidence shows that when the defendant was armed, he repeatedly yelled, are you looking for me, are you looking for me, are you looking for me? The officer was so alarmed by the defendant's unusual behavior and paranoid behavior that he drew his weapon before approaching the defendant. The officer testified that the defendant was unsure of his footing, that he was a little out of it. He had a revolver in the front seat under a blue rag that was loaded. He had a rifle in the back with ammunition. There was ammunition scattered throughout the car. Cannabis was recovered in his pocket, in his sock. There were four pipes, glass pipes used. They had four glass pipes that were recovered in the car. They had cannabis residue. And the defendant himself admitted during the pre-sentencing investigation that on the day of his arrest, he used cannabis. And also he pled guilty to driving under the influence of supervision, under the influence, and he was given supervision. And Margaret, I think all those facts Q. Did the trial judge make a statement to the effect that he had no idea whether the defendant was under the influence of cannabis? A. On pages 71 to 73, the judge expressed disappointment that no evidence of that was introduced, indicating that defendant's behavior may have shown paranoia. So it was not that he didn't find that there was no evidence introduced. He was disappointed that no evidence was introduced. And of course, the medical, the need to show that to prove him guilty. And the fact that his possession of cannabis was minor and it was just, you know, he was just transporting it, it's important to note that under the medical cannabis act, if a person who has a medical card, right, a driver, let's say in a car, if he possesses cannabis and it's not sealed in the cannabis control container and not tampered with, that's a Class A misdemeanor. So defendant's transportation, possession, you know, of illegal cannabis is certainly not minor and it's certainly not innocent. And coupled with the fact that he had a gun, he has not shown that his rights were in any way violated as applied to him. In the cases of Gouder and Vindrup, those deal, again, with licensing cases that where the plaintiffs were trying to restore their right to the Second Amendment due to a past conviction. Here, we're dealing with a disqualifying conviction contemporaneously and no time has passed, and especially no time has passed to show that Mr. Culley has rehabilitated and into a law-abiding, responsible citizen. Is there validity to Appelman's argument with respect to this is a felony for what essentially was a misdemeanor possession of cannabis? Is there any validity to that argument as to why this provision should be held unconstitutional? Not under the Second Amendment. Those questions, those arguments are better addressed by the legislature, who is responsible for defining offenses and establishing the sentencing. And here, the question is, was there, did we, did the reasoning fit, you know, was reasonably related to the, was the offense reasonable? You know, and was there a fit to the compelling interest in I think because it's, if the Second Amendment is impacted at all, it's so, it would be the lower level of intermediate scrutiny that would apply, not the more rigorous one. However, in my brief in here, I've argued the highest level because it survives all levels of scrutiny. Just one more point. The fact that this provision doesn't cover the use of cannabis while armed or any other, you know, problem, the fact that it's under inclusive doesn't make it unconstitutional. Especially, you know, and not under the Second Amendment. So the defendant has failed to show that the offense is facially invalid or that it was invalid as applied to him. And we would ask this court to affirm his conviction for aggravated unlawful use of a weapon. Thank you. Mr. Siegel, rebuttal. Thank you, Your Honors. Counsel refers to, as we discussed, that the Heller right applies to law up and Suarez and other cases along those lines might be licensing cases, but they involve people that got convicted of felonies. And the question becomes, do they forever lose Second Amendment rights? The question in this case is a little bit different because Mr. Kelly is not here before this and has the ability to possess a firearm. But the parallels... It's different here because the two offenses took place simultaneously, right? In those other cases, somebody had something on their record from the past. Maybe it was violent, maybe not. Maybe a felony, maybe a misdemeanor. And then later they were trying to get a gun, probably after Heller, and people were saying, well, no, you can't have one. But here we're not talking about something that the defendant did in his past and now he wants a gun. He was convicted of having a gun while having marijuana in his possession, right? That's a pretty big difference. Well, it's a difference, of course, but the reason why those other cases are law-abiding should, and they, all those cases address the question of should nonviolent offenses be enough to, in those cases, keep someone in the felony category? In this case, put someone in the felony category. And so while procedurally, of course, the cases are different, the analysis regarding what was protected, what persons were protected, what acts were protected under the Second Amendment, and what offenses, what types of offenses were disqualifying, those cases, I think, bear very good analogies to the case at bar here. Mr. Kelly shouldn't have to rely on the legislature to fix this. The law isn't under-inclusive. The law is over-inclusive. The law criminalizes something that, quite frankly, shouldn't be criminalized. But wouldn't you be essentially asking us to rewrite it? We don't write law. I'm not asking the court to rewrite the law. I'm asking the court to strike that the legislature can then rewrite it or not rewrite it as it chooses, and then I or some other attorney, some other litigant will deal with that situation if and when it ever happens. But I'm asking the court to address the law, well, really not as it applies now, but as it applied to Mr. Kelly back in 2012. Of course, the law has changed with regard to both the Concealed Carry Act, which affects the carriage of firearms in public anyway. But on February 1, 2012, the law as it was written then was unconstitutional. But again, how the legislature chooses or doesn't choose to address that is really beyond the scope of what I'm asking this court to address. But Mr. Kelly is unconstitutionally affected by it now, and that's what we're asking this court to address. The state, again, reiterates, and this will be my final point, again, unless the court has any questions. The state reiterates that their concern is about gun safety and public. The law that Mr. Kelly was convicted under did not serve the means of gun safety in public when analyzed under the Constitution analysis. There were plenty of other aspects of this law that almost indicta because Mr. Kelly wasn't charged with them, but that probably do mean that the law doesn't meet those standards, do meet constitutional scrutiny. I've talked about some of them. The use of a firearm in public while under the influence. And I mentioned in one of my briefs, it's the difference between using a gun while intoxicated and using a firearm while holding a closed bottle of beer. The possession with intent to sell of larger quantities of cannabis or meth or any other drug under the Controlled Substances Act. But the legislature of Illinois and plenty of other places has seen fit to either minimize the criminal impact of cannabis or eliminate it altogether. When we're talking about legislative purposes, I think we have to look at why. And while between the briefs of the parties, the impact of crime and marijuana use is something that will probably continue to be debated, it's almost irrelevant because Mr. Kelly, again, there's no evidence. There's innuendo about drug use, but the trial court did note that ultimately it did not know because there wasn't evidence. But again, ultimately there is a conviction for DUI on the record. I know that. Whether the trial judge in the case, in the Bench trial on the other statutes was concerned or disappointed about what evidence was not presented, that doesn't negate the fact that there was a DUI conviction that was neither challenged or vacated. I'm not asking the court. I acknowledge that that can't be vacated, but I am asking the court to look at the totality of the criminal trial and take that into account as well. Again, this law is overbroad as opposed to Mr. Kelly. And I believe it's overbroad in the narrow law that is being challenged here. I think it's overbroad really as applied to anyone. There's plenty of other statutes that we would not be here today, but this particular one is unconstitutionally unfair to Mr. Kelly. We ask that his conviction for felony under the three statutes be vacated. Thank you.